Allan P. VOLLERT, Plaintiff,

v.

SUMMA CORP. [Formerly known as Hughes Tool Co.] d/b/a Hughes Helicopters and Ordnance Systems, Defendant and Third-Party Plaintiff,

v.

TRW, INC., TRW MARLIN–ROCKWELL DIVISION, Third-Party Defendant.

Civ. No. 73–3834.

United States District Court,
D. Hawaii.

Feb. 26, 1975.

Paul F. Cronin, Allan S. Haley, Cronin, Fried, Sekiya & Haley, Honolulu, Hawaii, Timothy J. Healey, Healey & Donnelly, New York City, for plaintiff.

Burnham H. Greeley, Padgett, Greeley & Marumoto, Honolulu, Hawaii, Davis & Cox, New York City, for defendant and third-party plaintiff.

Richard E. Stifel, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for third-party defendant.

## MEMORANDUM AND ORDER

SAMUEL P. KING, Chief Judge.

Plaintiff, on November 8, 1974, filed a motion pursuant to Rule 37, Federal Rules of Civil Procedure, for an order compelling defendant to answer certain interrogatories served on February 12, 1974, and to produce a witness pursuant to notice of taking deposition served on August 3, 1974. Plaintiff's motion also requests that the court order defendant to pay plaintiff's reasonable costs and attorneys' fees incurred in obtaining the order and in attempting to negotiate a satisfactory resolution of defendant's objections to the discovery in question.

By the interrogatories and notice of taking deposition plaintiff seeks to discover: (1) defendant's initial and current authorized or stated capital; (2) defendant's net worth as of the date of the answers to the interrogatories; (3) defendant's total and net income for its fiscal years 1971 through 1974;[1] (4) the gross and net income for the same period for Hughes Helicopter Division, a part of Summa Corporation, if separate income records are maintained for the division; (5) the month and day on which defendant's fiscal year for accounting purposes ends; and (6) oral testimony regarding the net worth history for the same period of defendant and its predecessor in interest, Hughes Tool Company.

This discovery motion arises out of plaintiff's action to recover for personal injuries suffered in a helicopter accident at the Honolulu International Airport on January 1, 1973.[2] Defendant designed and manufactured the helicopter in question.

Plaintiff's complaint contains claims based on negligence, strict liability and breach of warranty. In addition, plaintiff alleges in his complaint that defendant's conduct "evinced a conscious and reckless disregard for the safety of the plaintiff, in that it wilfully, wantonly, maliciously, and fraudulently concealed" certain facts and "in spite of its knowledge of same, wilfully, maliciously, and fraudulently led such users into believing that the part which failed was safe", and prays for punitive damages.

Plaintiff argues that under Hawaii law, which applies in this diversity action, one of the factors relevant to a claim for punitive damages is "the amount of money required to punish the defendant, considering his financial condition." Howell v. Associated Hotels, Ltd., 40 Hawaii 492, 501 (1954). Thus, he argues, the information sought is necessary to sustain his burden of supporting the punitive damages requested.

Defendant makes several arguments in opposition to the discovery.[3] He asserts that in light of defendant's stipulation that its net worth is in excess of $335,000,000, the information sought is neither relevant nor reasonably calculated to lead to admissible evidence, and that the demand is premature because defendant would be prejudiced if the discovery is allowed at the present time while there are several threshold issues

---

1. Originally, plaintiff asked for the information for the years 1970 through 1973, but has revised this in light of defendant's delay in answering. In light of the substantial delay of this matter, this revision seems reasonable, and is allowed.

2. There are four related actions at stake here, and four separate plaintiffs. By stipulation, counsel for all parties have agreed that discovery in any one case may be used

in any other case. However, only two of the cases involve punitive damages.

3. Defendant has not sought, by motion, a protective order. Nevertheless, given the long history of negotiations between the parties, plaintiff is on notice of defendant's objections to the discovery sought. Therefore, the court will treat defendant's arguments as seeking a protective order.

requiring determination before plaintiff has any need for the information.

Defendant recognizes that under Rule 26, Federal Rules of Civil Procedure, liberal discovery is the rule,[4] but correctly argues that such discovery has limits.[5] Plaintiff's motion is not an all or nothing proposition, and this court may fashion an order taking into account the special nature of this case [6] and the legitimate interests of both parties.

■ Defendant first argues that punitive damages should not be allowed in this case at all because of the products liability context. Additionally, it argues that to allow such damages would violate its right to due process and equal protection. I find both of these arguments unpersuasive. As to the constitutional challenge against the punitive damage rule, defendant has failed to provide the court with a citation to any case in which a court held that allowing punitive damages violated a defendant's due process or equal protection rights. Certainly an argument can be made that punitive damages are not the most effective way in which to punish or deter antisocial conduct, especially when applied to large corporations, but this argument does not rise to constitutional dimensions. Further, if the issue goes to the jury, and if the jury awards such damages, the court can, pursuant to a proper motion, examine that award. Thus, there is, at this stage, no constitutional infirmity in allowing the claim for punitive damages [7] nor in compelling discovery of financial information to support that claim.

■ In respect to the products liability context of the case, defendant cites Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2d Cir. 1967), for the proposition that punitive damages are inappropriate in a products liability case. Plaintiff, in turn, cites Toole v. Richardson-Merrell, Inc., 251 Cal.App.2d 689, 60 Cal.Rptr. 398 (1967), for the opposite proposition. Whether or not punitive damages may be claimed in this case is, of course, a matter of state law. Since the Hawaii Supreme Court has not faced this question, this court must, in light of present state law, predict what rule the supreme court would adopt. In this connection, Judge Friendly's statement in the *Roginsky* case is relevant:

> [T]he New York cases afford no basis for our predicting that the Court of Appeals would adopt a rule disallowing punitive damages in a case such as this, and the *Erie* doctrine wisely prevents our engaging in such extensive law-making on local tort liability, a subject which the people of New York have entrusted to their legislature and, within appropriate limits, to their own courts, not to us.[8]

Similarly, there is nothing in the Hawaii cases dealing with punitive damages which would permit this court to hold that a claim for punitive damages cannot be maintained here.[9]

Moreover, the court in *Roginsky* pointed to the fact that defendant in that case was being sued in 75 other cases in the same district and in several hundred cases filed elsewhere.[10] All of those cases were based upon the same

---

4. Rule 26(b) provides in part:
   Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery

   . . . .

5. *See, e. g.,* United Air Lines, Inc. v. United States, 26 F.R.D. 213, 219 n. 9 (D.Del. 1960).

6. Both parties imply, albeit for different reasons, that this case is a special one. Plaintiff's Memorandum, filed December 13, 1974,

at 16; Defendant's Memorandum, filed December 2, 1974, at 4–5.

7. *See* Toole v. Richardson-Merrell, Inc., 251 Cal.App.2d 689, 719, 60 Cal.Rptr. 398, 419 (1967) (opinion on denial of rehearing).

8. Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 841 (2d Cir. 1967).

9. *See, e. g.,* Howell v. Associated Hotels, Ltd., 40 Hawaii 492 (1954) ; Bright v. Quinn, 20 Hawaii 504 (1911).

10. Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 834 (2d Cir. 1967).

acts of defendant. There can be little doubt that the defendant's potential liability for compensatory damages alone in these suits was a strong argument in favor of prohibiting punitive damages. It would appear most inequitable to foreclose effective monetary relief to some injured persons because extensive punitive damages were granted to those who happened to obtain judgments earlier. Here, defendant does not point to any suits against it connected with the acts alleged by plaintiff in his claim for punitive damages, other than the four here. It would require a substantial change in the law to hold that simply because there *might be* other suits filed against defendant, punitive damages should not be allowed. Therefore, I hold that under the allegations of the complaint, plaintiff may maintain his action for punitive damages.

Defendant's second point is that even if punitive damages may be claimed, nevertheless discovery should not be allowed at this time because it is premature. To determine whether any discovery is appropriate at this time requires a balancing of plaintiff's need for the information and the possible prejudice to defendant if discovery is allowed.[11]

■ Defendant states that its financial records are confidential and protected by fundamental rights of privacy; that disclosure will subject it to annoyance, embarrassment and oppression; and that public disclosure may cause substantial losses of business to its competitors. Defendant has not supported these conclusionary statements. However, the cases cited in support of defendant's position demonstrate that it has a legitimate interest in maintaining the confidentiality of its financial records.[12] This interest in non-disclosure can be protected by limiting plaintiff's uses of the discovered information and prohibiting disclosure of the infor-

mation beyond the confines of this case. Thus, it does not follow that defendant's interest in avoiding possible prejudice from public disclosure can be protected only by prohibiting or postponing discovery.

■ Defendant further maintains that plaintiff has no need for the information at the present time. It is claimed that plaintiff must first prevail on the issue of liability and the issue of whether defendant's conduct justifies punitive damages in this case before the question of the amount of damages would be even arguably relevant. It is sufficient at this stage to state that plaintiff has shown that his claim for punitive damages is not spurious, and that the question of liability is a threshold issue in almost every action in which money damages are claimed. The existence of these issues does not mean that plaintiff should be precluded from preparing his case as to damages. Defendant's attorney well knows that both the issue of liability and the amount of damages normally go to the jury together. It must be assumed at this point that the jury will receive proper instructions as to how and when to decide the issue of punitive damages. Therefore, it is not premature for plaintiff to demand discovery of any financial information relevant to the question of punitive damages.

■ Finally, defendant argues that even if its financial information is relevant and discoverable in this case, plaintiff has no need for any further information since defendant has testified, through an officer, that its net worth is in excess of $335,000,000. Defendant's attorney states that the sole rationale for permitting evidence as to a defendant's net worth or financial condition is to afford the jury a point of reference in assessing punitive damages so that they may determine what amount is neces-

11. Hecht v. Pro-Football, Inc., 46 F.R.D. 605, 607 (D.D.C.1969); United Air Lines, Inc. v. United States, 26 F.R.D. 213, 219 (D.Del.1960).

12. Corbett v. Free Press Association, Inc., 50 F.R.D. 179 (D.Vt.1970); Hecht v. Pro-Football, 46 F.R.D. 605 (D.D.C.1969).

sary to punish the defendant and deter the defendant and others.[13] Further, he states, any award which would punish and deter an entity with a net worth of more than $335,000,000 would punish and deter anyone. Therefore, any additional information could only serve to prejudice defendant in the minds of the jury.

If this court sat as a state appellate court, this argument might require a reexamination of how the policies underlying an award of punitive damages may be best effectuated when applied to a large conglomerate corporation.[14] However, as was said by Judge Friendly in *Roginsky, supra,* this court does not make state law, but merely applies it. There is nothing in the decisions of the Hawaii Supreme Court which indicates other than that the jury should be able to have available to it defendant's "financial condition" in order to determine a proper award.[15] Indeed, as plaintiff points out, if a complete financial picture is not given to the jury, defendant might well be prejudiced by the resulting speculation.

This court is sensitive to defendant's concern in maintaining the confidentiality of its financial condition. This confidentiality can be accomplished by placing controls on plaintiff's use of the discovered information. Plaintiff has shown that the information sought is relevant to an issue in this case and that his claim is not spurious. Thus, in the absence of a showing of actual prejudice, defendant must disclose the information sought.[16]

■ Although this matter has been pending for some time, the facts in the record show that both parties have been negotiating the matter and it does not appear that defendant has acted in bad faith or that its objections were without foundation. Therefore, I find that an award of expenses against defendant is not justified.

Defendant is hereby ordered to answer plaintiff's third set of interrogatories numbered 8 through 16, filed and served February 12, 1974. Plaintiff's attorneys of record are prohibited from any further disclosure of the information except as further ordered by the court. Further protective measures which may be appropriate will be considered at the time of trial.

It is so ordered.

---

13. Howell v. Associated Hotels, Ltd., 40 Hawaii 492 (1954), appears to confirm defendant's statement:

The measure of exemplary damages should be the degree of malice, oppression, or gross negligence which forms the basis for the award and the amount of money required to punish the defendant, considering his financial condition.

*Id.* 40 Haw. at 501, *quoting,* 5 Sw.L.J. 468, 474 (1951).

14. It might be argued that the best way to punish and deter a profit-making corporation would be to remove all profit acquired through the activity in question. This might avoid questions of prejudice against large corporations and provide a firmer foundation for punitive damage awards.

15. *See* note 13, *supra.*

16. Plaintiff admits that if his motion as to the interrogatories is granted, he has no need for oral testimony by deposition. Plaintiff's Memorandum, filed December 13, 1974, at 17. The motion regarding the taking of a deposition is therefore denied.