**CEH, INC., Brian Handrigan, and Timothy Handrigan, Plaintiffs,**

v.

**FV "SEAFARER" (ON 675048), In Rem, Michael Doyle, Charles Niles, Roger Scott Smith and John Does 1–4, In Personam.**

**C.A. No. 92–0389L.**

United States District Court, D. Rhode Island.

March 10, 1994.

---

Mark A. McSally, James H. Reilly, III, and Donald J. Maroney, Kelly, Kelleher, Reilly & Simpson, Providence, RI, for plaintiffs.

Leonard W. Langer, Thompson, McNaboe, Ashley & Bull, Portland, ME and Barbara S. Cohen, Goldenberg & Muri, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is now before the Court on defendants' appeal from the Memorandum and Order of United States Magistrate Judge Robert W. Lovegreen granting plaintiffs' Motion to Compel response to their interrogatories. In his Memorandum and Order dated May 13, 1993, Magistrate Judge Lovegreen held that plaintiffs have a claim under general maritime law for punitive damages based upon allegations of willful, reckless and malicious misconduct of the individual defendants, and that plaintiffs need not establish a *prima facie* claim for punitive damages prior to discovering information regarding defendants' financial status. For the reasons stated below, the Order of the Magistrate Judge is affirmed.

## BACKGROUND

During the period May 23 through June 14, 1992, plaintiffs owned lobster pots, trawls and associated fishing gear which was located in the Atlantic Ocean and allegedly properly marked. Defendant Doyle was the owner of defendant F/V "Seafarer" which was captained by defendant Niles and/or defendant

Smith. During the relevant time period, defendants are alleged to have conducted dragging operations in the same location as plaintiffs' equipment, thereby damaging and/or destroying the equipment. Plaintiffs seek compensatory damages for the value of the equipment and for loss of income. In addition, plaintiffs seek punitive damages from the individual defendants, contending that the alleged damage to their gear resulted from the "intentional, willful, malicious and grossly reckless action" of the defendants.

Plaintiffs bring this action based on admiralty and maritime jurisdiction and pursuant to 28 U.S.C. § 1333. There is no statutory or unseaworthiness claim.

Defendants argue that they should not be required to answer interrogatories seeking discovery of their assets, net worth and general financial status for two reasons. First, defendants contend that plaintiffs cannot recover punitive damages under general maritime law, relying on *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Second, defendants contend that their financial status cannot be discovered without a *prima facie* showing by plaintiffs of facts sufficient to support a punitive damages claim.

## DISCUSSION

### I. *Availability of Punitive Damages Under General Maritime Law*

■ Defendants appeal the holding of Magistrate Judge Lovegreen that punitive damages are available under general maritime law in the circumstances of this case since there is no personal injury claim or claim of unseaworthiness. Plaintiffs' general maritime law theory is that defendants willfully and maliciously damaged their property.

The question on this appeal of the Magistrate Judge's Order is the effect of the Supreme Court's decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), on the recoverability of punitive damages under general maritime law. Plaintiffs argue that *Miles* did not decide that punitive damages are not recoverable under any circumstances in a maritime

claim and, thus, should not be extended to bar such awards where the plaintiffs have not asserted any statutory claim. Defendants' contrary reading is that *Miles* has limited the remedies available under all general maritime law theories to those which the Jones Act, 46 U.S.C.App. § 688, allows.

Punitive damages have long been awarded under general maritime law against defendants who engage in "lawless misconduct" that amounts to "gross and wanton outrage." *The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 558, 4 L.Ed. 456 (1818). The District of Rhode Island, relying in part on the authority of *The Amiable Nancy*, long ago recognized the concept of punitive damages in admiralty for willful and malicious actions. *The Seven Brothers*, 170 F. 126 (D.R.I.1909). Prior to *Miles*, the First Circuit allowed punitive damages in an action under general maritime law for willful and arbitrary refusal to pay maintenance and cure.[1] *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048 (1st Cir. 1973). The Fifth Circuit followed this line of authority in *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir.1984). *See also Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987). Additionally, in *In re Merry Shipping, Inc.*, 650 F.2d 622, 625–26 (5th Cir.1981), the Fifth Circuit held that, even if punitive damages are barred under the Jones Act, they are recoverable under the general maritime law of unseaworthiness if the shipowner's breach of duty reveals the requisite bad state of mind.

In *Miles*, the Supreme Court addressed whether a deceased seaman's surviving, nondependant parent could recover loss of society damages in a wrongful death action brought under the Jones Act and general maritime law. In considering the remedies available for the wrongful death of a seaman, the *Miles* Court noted that in the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. §§ 761–767, Congress specifically limited the damages recoverable in a wrongful death case arising on the high seas to the "'pecuniary loss sustained by the persons for whose benefit the suit is brought.'" · *Miles*,

---

1. Before *Miles*, the First Circuit also indicated that punitive damages are available in an action by a passenger for intentional infliction of emotional distress through harassment. *Muratore v. M/S Scotia Prince*, 845 F.2d 347 (1st Cir.1988).

498 U.S. at 31, 111 S.Ct. at 325 (quoting 46 U.S.C.App. § 762) (emphasis deleted). Further, *Miles* concluded that while the Jones Act, unlike DOHSA, does not on its face limit the scope of recoverable damages, Congress similarly restricted the relief available in Jones Act wrongful death cases to pecuniary damages by incorporating into the Act the substantive recovery provisions of the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, including its damages limitation. *Miles,* 498 U.S. at 32, 111 S.Ct. at 325. While FELA ambiguously stated that employers are liable in "damages" for the injury or death of one protected under the Act, 45 U.S.C. § 51, FELA had been consistently interpreted as providing recovery only for pecuniary loss. *Miles,* 498 U.S. at 32, 111 S.Ct. at 325 (citing *Michigan Cent. R.R. Co. v. Vreeland,* 227 U.S. 59, 69–71, 33 S.Ct. 192, 195–96, 57 L.Ed. 417 (1913)). The *Miles* Court concluded that since the *"Vreeland* gloss on FELA" was firmly rooted when Congress enacted the Jones Act, and since Congress incorporated FELA unaltered into the Jones Act, "Congress must have intended to incorporate the pecuniary limitation on damages as well." *Miles,* 498 U.S. at 32, 111 S.Ct. at 325. Hence, the Court held that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." *Id.*

The *Miles* Court also rejected the plaintiff's efforts to get loss of society damages under the general maritime law of unseaworthiness, holding that there can be "no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Miles,* 498 U.S. at 33, 111 S.Ct. at 326. Having explained that the Jones Act and DOHSA permit only pecuniary damages which do not include damages for loss of society, the Court stated that uniformity mandated that there be no recovery for loss of society in a seaman's wrongful death claim brought pursuant to the general maritime law of unseaworthiness. While general maritime law would have permitted such recovery, DOHSA and the Jones Act would not and uniformity would be compromised if general maritime law were to permit remedies not afforded by the relevant federal statutes. The Court noted that, "[I]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Miles,* 498 U.S. at 32–3, 111 S.Ct. at 326. In sum, the Court concluded that it had "restore[d] a uniform rule *applicable to all actions for the wrongful death* of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Miles,* 498 U.S. at 33, 111 S.Ct. at 326 (emphasis added).

Thus, *Miles* teaches that Jones Act seamen are limited to recovery of their pecuniary losses in wrongful death and survival actions. Post-*Miles* cases uniformly conclude that punitive damages are nonpecuniary and, therefore, are not recoverable under *Miles'* interpretation of the Jones Act.[2] *See Miller v. American President Lines, Ltd.,* 989 F.2d 1450, 1457 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 304, 126 L.Ed.2d 252 (U.S.1993); *Anderson v. Texaco, Inc.,* 797 F.Supp. 531, 534 (E.D.La.1992); *In re Waterman S.S. Corp.,* 780 F.Supp. 1093, 1095 (E.D.La.1992) ("The Court's rationale for disallowing consortium type claims in *Miles* is stated in terms broad enough to encompass other nonpecuniary damages."); *In re Aleutian Enterprise, Ltd.,* 777 F.Supp. 793, 794 (W.D.Wash.1991); *Brumfield v. Zapata Gulf Marine Corp.,* 1991 WL 174818, 1991 U.S.Dist. LEXIS 12329 (E.D.La. August 29, 1991); *Rowan Cos. v. Badeaux,* 1991 WL 175541, 1991 U.S.Dist. LEXIS 12355 (E.D.La. August 28, 1991); *Rollins v. Peter-*

2. Indeed, even before *Miles,* the Ninth Circuit had held that since the Jones Act limits recovery to pecuniary loss, and since punitive damages are nonpecuniary, a seaman cannot recover punitive damages under the Jones Act. *Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1347 (9th Cir. 1987), *cert. denied,* 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989); *Kopczynski v. The Jacqueline,* 742 F.2d 555, 560–61 (9th Cir.1984), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). The Fifth Circuit also noted (without deciding the issue) that its previous holding that only pecuniary damages were recoverable under the Jones Act cast serious doubt upon the availability of punitive damages under the Act. *In re Merry Shipping, Inc.,* 650 F.2d 622, 626 (5th Cir.1981) (citing *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524, 526 (5th Cir. 1979) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980)).

*son Builders, Inc.,* 761 F.Supp. 943, 948 (D.R.I.1991).

 This Court agrees that punitive damages are nonpecuniary in character. Pecuniary damages are designed to restore "material loss which is susceptible of a pecuniary valuation." *Vreeland,* 227 U.S. at 71, 33 S.Ct. at 196 (internal quotation omitted). Punitive damages, on the other hand, do not compensate for a loss, but rather are imposed to punish and deter according to the gravity of the offense. *See Molzof v. United States,* —— U.S. ——, ——, 112 S.Ct. 711, 715, 116 L.Ed.2d 731 (U.S.1992) (Punitive damages are given " 'having in view the enormity of [the] offense rather than the measure of compensation to the plaintiff.' " (quoting *Day v. Woodworth,* 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1852))); *Northwestern Nat'l Casualty Co. v. McNulty,* 307 F.2d 432, 434 n. 2 (5th Cir.1962) (Punitive damages are " 'damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct.' " (quoting Restatement of Torts, § 903)); *In re MARDOC Asbestos Case Clusters 1, 2, 5 & 6,* 768 F.Supp. 595, 599 (E.D.Mich.1991) (punitive damages do not seek to compensate for a pecuniary loss, but to punish wrongdoers and to deter others); *see also Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1347 (9th Cir.1987) ("[p]unitive damages are non-pecuniary damages"); *Kopczynski v. The Jacqueline,* 742 F.2d 555, 561 (9th Cir.1984) (same), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985); *Waterman,* 780 F.Supp. at 1095 ("There is much authority that punitive damages are not pecuniary in nature.").

*Miles* clearly established a policy of uniformity on the type of damages available in an action for the wrongful death of a seaman whether brought under the Jones Act, DOHSA or general maritime law. Because of this policy, many district courts have interpreted *Miles* as precluding punitive damages in personal injury or wrongful death actions based on unseaworthiness or negligence under general maritime law. *See, e.g., Ellison v. Messerschmitt–Bolkow–Blohm,* 807 F.Supp. 39 (E.D.Tex.1992); *Haltom v. Lykes Bros. S.S. Co.,* 771 F.Supp. 179, 181 (E.D.Tex.1991)

(noting that after *Miles* the Fifth Circuit would likely hold that punitive damages are not recoverable under general maritime law for the wrongful death of a seaman); *Waterman,* 780 F.Supp. at 1096 (noting *Miles* focus on the need for consistency in actions involving general maritime law claims joined with Jones Act claims); *In re Cleveland Tankers, Inc.,* 791 F.Supp. 679, 682 (E.D.Mich.1992) (*Miles* bars seaman's claim for punitive damages under general maritime law of unseaworthiness in personal injury setting because "the central tenet of *Miles* [is] that where Congress has legislated in an area of maritime law, case law-created remedies must be uniform with such legislation."); *In re Aleutian Enterprise, Ltd.,* 777 F.Supp. 793, 795–96 (W.D.Wash.1991) (no punitive damages under general maritime law for injury claims within the scope of the Jones Act); *Donaghey v. Ocean Drilling & Exploration Co.,* No. 90–0163, 1991 WL 99490 (E.D.La. June 5, 1991) (punitive damages not available in a Jones Act/general maritime law claim where plaintiff was injured as a result of defendant's gross negligence)[3]; *Rollins v. Peterson Builders, Inc.,* 761 F.Supp. 943, 949 n. 4 (D.R.I.1991) (holding punitive damages unavailable under general maritime law for wrongful death, and distinguishing cases not dealing with wrongful death claims since "these cases do not address the preclusive effect of the Jones Act or DOHSA"); *La Voie v. Kualoa Ranch & Activity Club, Inc.,* 797 F.Supp. 827, 831 (D.Haw.1992) (*Miles* bars punitive damages under the general maritime law of unseaworthiness for injured seamen).

It is important to note, however, that many courts have explicitly held that *Miles* is not a complete bar to the recovery of punitive damages under general maritime law. *See, e.g., Davis v. Penrod Drilling Corp.,* 1991 WL 264541, 1991 U.S.Dist. LEXIS 17635 (E.D.La. December 2, 1991); *Duplantis v. Texaco, Inc.,* 771 F.Supp. 787, 788–89 (E.D.La.1991) (punitive damages available under general maritime law for injuries resulting not from unseaworthiness but rather from defendant's alleged willful and wanton

---

3. While the *Donaghey* court did literally state that "punitive damages cannot be recovered under the general maritime law," the court was deciding the issue of punitive damages in the context of an unseaworthiness claim. *Donaghey,* 1991 WL 99490, at *3.

misconduct); *Logue v. Tidewater, Inc.*, No. 91–1109, 1992 WL 59409 (E.D.La. March 17, 1992) (refusing to extend *Miles* beyond claims for loss of society or consortium to bar Jones Act/general maritime law claim for punitive damages). For example, many courts have held that, while *Miles* precludes recovery of punitive damages for personal injury or wrongful death claims grounded in negligence or unseaworthiness, *Miles* does not preclude punitive damages for failure to provide maintenance and cure. These cases reason that *Miles'* policy of uniformity of damages under the Jones Act, DOHSA and general maritime law has no effect on maintenance and cure awards since Congress has never legislated in the area of maintenance and cure. *See, e.g., Ortega v. Oceantrawl, Inc.*, 822 F.Supp. 621, 624 (D.Alaska 1992) (rationale in *Miles* does not extend to punitive damages in regard to maintenance and cure); *Ridenour v. Holland America Line Westours, Inc.*, 806 F.Supp. 910, 911 (W.D.Wash.1992) ("The *Miles* Court did not address maintenance and cure but only wrongful death actions brought by seamen."); *Howard v. Atlantic Pacific Marine Corp.*, 1992 WL 55487, at *2, 1992 U.S.Dist. LEXIS 2474, at *4–5 (E.D.La. Feb. 28, 1992) (holding punitive damages available under general maritime law for maintenance and cure claims because, "unlike unseaworthiness and negligence claims, maintenance and cure claims have no counterpart under the Jones Act or the DOHSA" and, thus, *Miles'* policy of uniformity of damages is inapplicable); *Bachu v. International Marine Terminals*, 1991 WL 211519, 1991 U.S.Dist. LEXIS 14485 (E.D.La. September 27, 1991); *Rowan Cos. v. Badeaux*, 1991 WL 175541, at *2, 1991 U.S.Dist. LEXIS 12355, at *4–5 (E.D.La. August 28, 1991) (Remedies for failure to pay unaffected by *Miles* because " 'Congress has left to the courts the task of "writing the rules" on maintenance and cure.' " (quoting *Odeco, Inc. v. Cornish*, 1991 WL 160400, at *2, 1991 U.S.Dist. LEXIS 11580, at *4 (E.D.La. August 6, 1991))); *Collinsworth v. Oceanic Fleet, Inc.*, 1991 WL 165732, 1991 U.S.Dist. LEXIS 11759 (E.D.La. August 20, 1991) (holding that *Miles* does not preclude punitive damages in maintenance and cure cases); *Odeco, Inc. v. Cornish*, 1991 WL 148746, 1991 U.S.Dist. LEXIS 10827 (E.D.La. July 22, 1991).

Defendants contend that, in light of *Miles*, this Court should hold as a matter of law that punitive damages are not recoverable under general maritime law. As the District Court for the Eastern District of Louisiana stated in *Anderson v. Texaco, Inc.*, "[T]his overstates *Miles*'s [sic] teaching. *Miles* does not affect the availability of nonpecuniary damages under the general maritime law, if Congress has not already defined the relief available in a particular factual setting." *Anderson v. Texaco, Inc.*, 797 F.Supp. 531, 536 (E.D.La.1992).

The *Miles* decision that there is no cause of action for loss of society for the wrongful death of a seaman under DOHSA, the Jones Act, or general maritime law was driven by these "fundamental principles":

> We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection *from injury and death;* Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.

*Miles*, 498 U.S. at 27, 111 S.Ct. at 323 (emphasis added).

 Thus, *Miles* teaches only that courts cannot create remedies under general maritime law that exceed those granted (or limited) by statute. While "*Miles* compels the conclusion that a plaintiff who is statutorily barred from receiving a punitive award cannot recover punitive damages by couching his claim in the judge-made general maritime law of negligence and unseaworthiness," *Anderson*, 797 F.Supp. at 535, *Miles* says nothing of the plaintiff whose claim falls outside of the statutory umbrella of the Jones Act or DOHSA.

■ After *Miles*, when determining the scope of permissible relief in maritime cases:

[C]ourts must first evaluate the factual setting of the case and determine what statutory remedial measures, if any, apply in that context. If the situation is one addressed by a statute like the Jones Act or DOHSA, and the statute informs and limits the damages that are recoverable, the statute alone governs the remedy. The general maritime law will not expand the damages available when Congress has spoken to the relief it deems appropriate or inappropriate. The statutory mandate is supreme and precludes inconsistent judicial 'supplements.'

*Anderson*, 797 F.Supp. at 536 (citation omitted).

*Miles*, then, does not create a total bar to recovery of punitive damages under general maritime law. Clearly, before *Miles*, "the general maritime law contemplated punitive damages for gross and wanton conduct in an action under the general maritime law *not based on unseaworthiness.*" *Duplantis*, 771 F.Supp. at 788 (emphasis in original). Since general maritime law has recognized claims for punitive damages for well over a century, and since there has been no total bar to these claims, punitive damages remain available under general maritime law except as specifically held otherwise by *Miles*.

■ *Miles* does not affect the punitive damages claims of plaintiffs in the instant litigation. Plaintiffs' claims for punitive damages are based on the alleged willful, reckless and malicious conduct of defendants in damaging and/or destroying plaintiffs' fishing equipment. The issue is whether punitive damages are recoverable under general maritime law in a claim for damage to or loss of property. Like a claim for punitive damages for willful failure to pay maintenance and cure, plaintiffs' claims are unaffected by *Miles* since the claims are not reached by any maritime statute. The facts and circumstances of this case remove it from statutes protecting classes of individuals under traditional maritime law: the Jones Act, 46 U.S.C.App. § 688, which protects seamen; DOHSA, 46 U.S.C.App. §§ 761–767, applicable to the death of persons occurring on the high seas beyond a maritime league from shore; and the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, giving longshoremen worker's compensation benefits. Here there is no personal injury claim or claim of unseaworthiness.[4] The claim by plaintiffs is not pursuant to any statute. Plaintiffs are not injured seamen bringing negligence claims against their employer.[5] Plaintiffs' action does not present a situation "where statutory law provides a remedy different than the remedy provided under general maritime law, unlike the situation in *Miles.*" *Mussa v. Cleveland Tankers*, 802 F.Supp. 84, 86 (E.D.Mich.1992). Since *Miles* deals with recovery of damages under DOHSA and the Jones Act and the need to compel uniformity in general maritime law with these statutory remedies, *Miles* is not controlling here and in no way prohibits recovery of punitive damages for the type of claim presented by these plaintiffs.

## II. Requirement of Prima Facie Showing

Defendants argue that information about their finances is not discoverable until plaintiffs make a *prima facie* showing of a triable issue regarding punitive damages, and that plaintiffs have failed to make such a showing.

As a preliminary matter, it should be noted that discovery is a procedural matter governed in the federal courts by the Federal

---

**4.** Since the instant case does not involve a cause of action for personal injuries, *Miles* is even less relevant here than it was in *Duplantis* where the district court found *Miles* "inapposite" and allowed a claim for punitive damages under the general maritime law for injuries not based on unseaworthiness but on the defendant's alleged willful and wanton conduct. *Duplantis*, 771 F.Supp. at 788–89.

**5.** *See Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1283 (1st Cir.), *cert. denied*, — U.S. —,

113 S.Ct. 2987, 125 L.Ed.2d 682 (U.S.1993) ("Jones Act provides the exclusive recovery in negligence for claims by seamen against their employers"); *Mussa v. Cleveland Tankers*, 802 F.Supp. 88 (E.D.Mich.1992) (*Miles'* holding and policy of uniformity apply only to actions by Jones Act seamen who have a statutory claim against their employer, and not to actions by seamen against a third party under a general maritime claim of negligence).

Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant. *American Ben. Life Ins. Co. v. Ille*, 87 F.R.D. 540, 542 (W.D.Okla.1978); *see also* 8 Wright & Miller, Federal Practice and Procedure: Civil § 2005 (1970) (state law will govern only when the Federal Rules so indicate). Under Fed.R.Civ.P. 26(b)(1), a party is entitled to discovery of any non-privileged matter which is relevant to the subject matter involved in the pending action. Information concerning the defendants' finances is relevant in this case because it can be considered in determining punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981); *Ramsey v. Culpepper*, 738 F.2d 1092, 1099 (10th Cir.1984); *Spaeth v. Union Oil Co.*, 710 F.2d 1455, 1460 (10th Cir.1983), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986); *Folks v. Kansas Power & Light Co.*, 243 Kan. 57, 75–76, 755 P.2d 1319, 1334 (1988).

When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information about the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages. *Fretz v. Keltner*, 109 F.R.D. 303, 310–11 (D.Kan. 1986) ("plaintiffs have alleged sufficient facts in support of their position [claim for punitive damages], therefore the requested information is both relevant and discoverable"); *Randall v. County of Wyandotte*, No. 87–2580–0, 1988 WL 139522 (D.Kan. Dec. 5, 1988); *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 329–30 (D.Mont.1988); *St. Joseph Hospital v. INA Underwriters Ins. Co.*, 117 F.R.D. 24, 25–26 (D.Me.1987); *In re Bergeson*, 112 F.R.D. 692, 696 (D.Mont.1986); *Renshaw v. Ravert*, 82 F.R.D. 361, 363 (E.D.Pa.1979); *American Ben. Life Ins. Co. v. Ille*, 87 F.R.D. at 542–43; *Lackawanna Refuse Removal, Inc. v. Proctor and Gamble Paper Products Co.*, 26 Fed.R.Serv.2d 375, 376 (M.D.Pa.1978); *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 140 (W.D.Okla. 1977); *Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351 (D.Haw.1975); *Holliman v. Redman Dev. Corp.*, 61 F.R.D. 488, 490–91

(D.S.C.1973); *see also* Annotation, *Pretrial Discovery of Defendant's Financial Worth on Issue of Damages*, 27 A.L.R.3d 1375, 1377 (1969) (most state courts permit pretrial discovery of defendant's financial condition without requiring a *prima facie* showing of entitlement to punitive damages).

However, some federal courts have not allowed pretrial discovery of financial information when a punitive damages claim has been asserted. *See John Does I–VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C.1986) (discovery of financial status should not be turned over until necessary to prove punitive damages); *Davis v. Ross*, 107 F.R.D. 326, 327–28 (S.D.N.Y.1985) (court holds it is required to follow state court rule barring discovery of net worth until the trier of fact finds that the plaintiff is entitled to punitive damages)[6]; *Chenoweth v. Schaaf*, 98 F.R.D. 587, 589–90 (W.D.Pa.1983) (discovery barred absent allegations in complaint of facts demonstrating a "real possibility" that punitive damages will be at issue); *Rupe v. Fourman*, 532 F.Supp. 344, 350–51 (S.D.Ohio 1981) (in a bifurcated trial, discovery of personal financial status for punitive damages claim not permitted unless and until defendant's liability established).

■ After reviewing the cases cited above and the arguments of the parties, this Court affirms the holding of the Magistrate Judge that plaintiffs need not establish a *prima facie* case on the issue of punitive damages before they can obtain pretrial discovery of defendants' financial information. Plaintiffs have alleged facts sufficient to make a claim for punitive damages, and sufficient to show that their claim for punitive damages is not spurious. Plaintiffs are, thus, entitled to discovery of defendants' financial information. *See Vollert*, 389 F.Supp. at 1351.

■ First, this Court notes that the requirement that claimants establish a *prima facie* case applies to the *admissibility* of evidence about financial status, not its *discoverability*. *Baker*, 123 F.R.D. at 330. The discoverability of information is governed by whether it would be relevant, not by whether

6. The court in *Davis* erred by not considering the fact that the issue of discoverability is a procedural matter, not a substantive matter, and is thus governed by the Federal Rules of Civil Procedure, as noted earlier in this opinion.

the information discovered would be admissible at trial. *St. Joseph Hospital*, 117 F.R.D. at 25–26.

To require a *prima facie* showing of entitlement to punitive damages before the completion of discovery would be to ignore one purpose of discovery—to locate evidence to support a claim before trial. Additionally, knowledge of defendants' net worth may be of value to both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation. *See Holliman*, 61 F.R.D. at 491. Furthermore, to deny discovery of net worth until plaintiffs can make a showing of a *prima facie* case at trial would only lead to delay and confusion while plaintiffs digest the information. *St. Joseph Hospital*, 117 F.R.D. at 26.

Finally, while a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order. *In re Bergeson*, 112 F.R.D. at 696; *Vollert*, 389 F.Supp. at 1351. The Court does recognize that a protective order may not always protect a party. For example, if the plaintiff and the defendant were business competitors, disclosure of the defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm. In such circumstances, a delay in discovery until a *prima facie* showing of entitlement to punitive damages is shown might be justified. However, that issue is not before the Court in this case. On the facts of this case, the Court concludes that a protective order would provide defendants with adequate protection while permitting discovery to proceed in an orderly manner.

## CONCLUSION

For the reasons stated above, the Magistrate Judge was correct in holding that plaintiffs have a claim under general maritime law for punitive damages based upon allegations of willful, reckless and malicious misconduct of the individual defendants, and that plaintiffs need not establish a *prima facie* case for punitive damages prior to discovering information regarding defendants' financial status. Therefore, the Order of the Magistrate Judge dated May 13, 1993 granting plaintiffs'

Motion to Compel answers to interrogatories is affirmed. It is so ordered.